and William C. Wetzel, Case Numbers 18-1174 and 19-2494. We will consolidate the time for appellants. We have two law students advocating and we will go with 15 minutes from Ms. Best followed by 15 minutes by Ms. Wine followed by counsel for appellee. Mr. Soxie, do you say any words of introduction before Ms. Best argues? Just briefly, your honor. May it please the court. Will Soxie, pro bono counsel for Mr. Burton and along with my colleague Kate Unger Davis, also the supervising attorney for Sarah Best, who is a law student at the University of Pennsylvania. The court has admitted Ms. Best as an eligible law student. So with the court's permission, I'd like to turn it over to her to Ms. Best. The virtual floor is yours. You have 15 minutes, subject to any time you'd like to reserve for rebuttal. Thank you, your honor, and good morning. May it please the court. As you heard, my name is Sarah Best and I represent the appellant, Mr. Daunte Burton, in this matter. Before I get started, may I reserve three minutes for rebuttal? Sure. Thank you. This morning, I will be discussing the issues that are common to both Mr. Burton's and Mr. William's case. The jurisdictional question of whether both parties must consent for magistrate-judge jurisdiction. Afterwards, you will hear from my colleague, Ms. Huang, issues of implied consent as well as post-judgment consent. If time permits, your honors, I would also like to briefly address the second question on appeal for Mr. Burton's case, the question of whether the magistrate-judge properly dismissed his complaint with prejudice and without need to amend. But really, your honors, the matter is at the threshold by the text of the Federal Magistrate Act, codified in 28 U.S.C. 636 c.1. That text expressly conditions magistrate-judge jurisdiction on the consent of the parties. Here, the magistrate-judge dismissed Mr. Burton's complaint with the consent of only one party, and therefore, he exceeded his scope of statutory authority. But don't we really go behind the statute to the Constitution and the difference between an Article I judge and an Article III judge? You know, Article III judges are very jealous of their terrain. We don't necessarily want, I shouldn't say this because many, many, many Article III judges are delighted with the the cases that say that Article I judges cannot exercise Article III judicial powers. And certainly, dismissing a case with prejudice would seem to be an essential Article III power. And have you even created a court that can consider such a dismissal if you have an Article I judge performing that function and only one of the parties has consented to the participation of that Article I judge in an Article III proceeding? I don't think you have jurisdiction to make any of these steps until you have consent by all the parties, whether they have filed their appearance or not, to creating a court in which an Article I judge can perform an Article III function. Absolutely, Your Honor. And that constitutional question certainly animates the entire backdrop of this case. And this court, four years after the federal magistrate-judge act was passed in 1979, so in 1983, this court, when it ruled on the constitutionality of this very provision at issue, it relied on this mutual consent requirement, which makes it even more difficult to argue that the magistrate-judge here in this case had any authority to dismiss Mr. Burton's case. I mean, the answer goes like this, though. I mean, if we want to be realistic, okay, we know that any party who gets an action dismissed against them is going to think that's great. And, you know, it would be a rare, rare day for them to say, I didn't want to consent to the dismissal of the action. Now, maybe, for whatever reason, they might be unhappy with what the court said along the way in dismissing it or, you know, something like that. But in general, you know, doesn't the answer go if we just inject a little bit of realism into how we read these rules that no one cares? Because the winner isn't going to say, yeah, I was prejudiced by not consenting. And the loser already consented. And so, I mean, just in the sense that maybe we would give, you know, realistic read to the rules, it, you know, I'm having a hard time finding out, like, other than just pure formalism concerns, where the harm is. Certainly, Judge Fitts, that is a valid argument to raise. But however, as Judge Roth has mentioned, you know, this is more than just formalism. This is about upholding the delicate separation of power that is mandated by the structure of the Constitution. So, we do want to make sure that we are always thinking about the constitutional implications of this decision. So, let's just think about those in terms of what the downstream remedy should be. I mean, we just send this back and say, okay, we have a huge problem here of constitutional dimension. The defendants did not consent. So, we're going to remand it. Now, we want to see if they consent. Then they consent. And then we say, okay, huge constitutional problem avoided. We've secured their consent. Well, it has been avoided if it was not a properly constituted court in the first place. Yes, Your Honor. So, here, whether or not this feels like a question of constitutional dimension, certainly the question here is about, you know, the degree of harm to the individual litigants that are here before the court today. It's a broader question of statutory interpretation with constitutional import in the question. Yes, Your Honor. So, what's the remedy? So, let's just say that we put these concerns grounded in realism to the side. And let's say that, no, this is a time when statute that codifies constitutional concerns matters. We put all that to the side. Well, what's the remedy? Because, you know, rights tend to come with remedies. And so, what do we do? Do we send this down and say it has to be in front of a district court? Do we send this down and say both parties get to redo their consent? Your client gets to his consents now in nullity. And now, kind of knowing what's behind the curtain, he can now give maybe more informed consent than most people ever get to do. But he would have the ability to do that. Like, what are your thoughts on remedy? Yeah. So, typically, if, you know, when this Court of Appeals has found that the magistrate judge lacked jurisdiction under 6361 in particular, then the appropriate remedy is to vacate the decision. And then what though? Because vacating the decision, maybe a little more guidance is needed, as my colleague Jed Ross says, because without more guidance, the magistrate judge may say, okay, now I want to hear from the defendants. The defendants consent, the defendants probably would consent. And so, I guess my thought is vacating, if you win, vacating seems correct. But what else do we do in terms of making sure that this case gets on the proper track? Okay, you can get recorded recommendation from the magistrate judge, which is approved by the court. Yes, absolutely. That would resolve a constitutional error here. And again, even if it seems like it doesn't have the greatest consequence in this individual case, it, you know, this court has the independent obligation to assess this jurisdictional question here. It has the authority to do so. It has the authority to clarify what 6361 actually does require so that it is clear in the future for all litigants to know what form of consent is required before a magistrate judge may properly hear the case. And it's apparent in the text of the statute. It's hard to deviate from the plain text, the plain meaning. It's hard to argue at all that there's any ambiguity here. The text of the statute uses the plural. It uses the word parties. And not just that, not just the fact that, you know, we could take at face value that Congress meant that the plural parties was required to more broadly, but the plural is used consistently and exclusively for any issues that are related to consent. So when we're talking about the consent that's required for the jurisdiction, when we talk about the consent procedures, we see that the plural is being used. In every other context in this statutory provision, in 636C, we see the singular being used. So we know that there's intentionality on Congress's part to have this mutual consent requirements to make sure that unilateral consent is never sufficient for magistrate judge jurisdiction. And according to- What about the notion that the definition of parties should not include unserved parties? Certainly. So that, if we were to do that first, the definition of parties should depend, and it should vary depending on the context, right? That is a mandate from the Supreme Court in Devlin v. Scardelletti that the definition of fixed label, rather that it depends on the context. So in the context here, if we are trying to create this loophole, whereby unilateral consent is sufficient for these screening procedures, simply because the defendant has not been served and simply because the district court would like to issue a judgment prior to service, that is creating a loophole that is going to completely undermine the consent requirement that is both embodied in the text, in the plain meaning of the statute, and that is required by the constitution. But again, if it's a context specific inquiry as to what party means, and here the dismissal is of a case against an unserved party, maybe in that context, if we do engage in a context by context analysis, the fact that there's really no, the party who the judgment is adverse to has consented. And so if we want to look at a context specific approach, it strikes me that maybe, and party has had different meaning in other contexts to exclude or include unserved parties, maybe when there's the consent of a unserved party. What do you say to that? Well, I would still allow for the unilateral consent of a single party to vest the magistrate judge's jurisdiction, and that exceeds both constitutional and the statutory requirements. That still creates this problem. The matter of the defendants having a favorable decision, that doesn't mean that the magistrate judge no longer, that they no longer have to consent to the magistrate judge authority. The magistrate judge's decision binds both the plaintiff and the defendant still, even in these dismissals, even if the dismissal is favorable to the defendants. So this is maybe a far-fetched example, but let's just push it. Let's say there's an in rem action where there's one party against a thing. And that one party says, I consent to a magistrate judge. You would say, no, parties is plural. Magistrate judges can only take, action if there's two parties that consent, and we have to find out what happens to this thing somehow. In rem, magistrate judges may have jurisdiction over quasi in rem or in personam, but no in rem jurisdiction. Your Honor, I believe the 9th Circuit was able to distinguish the in rem situation. So when the 9th Circuit decided that this text unambiguously requires consent of both parties, both sides of the litigation, they were able to distinguish and also preclude in rem cases. So in that context, we would not hold such a stringent definition of the parties, but here we have plaintiffs who are humans and defendants who are people who could provide consent and they simply haven't. So defendants have not consented to magistrate jurisdiction and the magistrate judge is still exercising authority that's simply not his. And that is the issue here. Okay. I see that you're at time. Unless my colleagues have questions, I will ask Mr. Hetrick, who I see is on the line to introduce your colleague. But first, Judges Roth and Nygaard, do you have any questions for Ms. Best? I have none. Okay. All right. Thank you. Mr. Hetrick, as supervising attorney, is there any remarks that you'd like to make before we turn the floor over to Ms. Wong? No, sir. Only to introduce her to the panel. Good morning, your honors. I'm Joseph Hetrick from the Decker firm. We've been involved in Mr. Williams' case from early on, but the arguments today on all issues will be handled by Michelle Wang. Michelle is a student at the University of Pennsylvania Carey School of Law and she will address all of the issues. Thank you. Thank you, Ms. Wong. The floor is yours. You have 15 minutes. Would you like to reserve any time for rebuttal? Yes. Good morning, your honors. May I please reserve three minutes for rebuttal? Sure. Thank you. This court raised the issue of magistrate judge's jurisdiction to its fonte and certified four procedural questions. First, all defendants, including defendants Wetzel and Wetzel, are needed to consent to the magistrate judge's jurisdiction. As you heard from my colleague, Ms. Best, just now, under 28 U.S.C. Section 636C, consent from all parties is needed before the magistrate judge can have case dispositive power. Therefore, the only remaining issues here are whether post-judgment consent is effective and whether there is implied consent. The answer is no to both questions. And at the end, if time permits, I'll briefly turn to the issue that the magistrate judge prematurely granted summary judgment, an issue that this court did not reach because the magistrate judge did not have jurisdiction in the first place. And therefore, we ask this court to vacate the orders entered by the magistrate judge and remand the case for further proceeding. First of all, this court should not- Excuse me. Should we send it back to the same magistrate judge? Your honor, I believe you just sent it back to the district court and for new proceeding, and then the parties will determine whether or not they will consent to the magistrate judge. And certainly, with the work the magistrate judge has done, could issue a report and recommendation to the district court judge under 636B. Turning back to the issue of post-judgment consent, this court should not recognize post-judgment consent because it violates the plain meaning of the statute. It contradicts the very notion of consent and it will create perverse policy incentives. Under 636C, it reads, upon consent of parties, magistrate judge may conduct proceedings. Upon clearly means immediately or very soon after. It signals a timing requirement in the statute. And as recognized by Congress, even if we were to look into the legislative history, which this court does not need to look into because the text is clear, Congress has described the act as authorizing magistrate judge to act with consent from parties, quote, in advance. And here, the defendants have consented six months after the magistrate judge issued the summary judgment. That's clearly not within what has been intended by Congress. So what do you think about this? In the law, every now and then, people say these words of advice and all these other things. And one of the words of advice I heard when I was a young lawyer is, the only deadline that you can't go back in time and change is the 30 days to file a notice of appeal. They said everything else you can file a nunk-pro-tunk motion and make now is then. I don't know if that was good advice or bad advice. I probably have a nuanced view of it now. But what my thinking is, is the law recognizes sometimes that we have to do nunk-pro-tunk, now is then, issues. This happens if someone misses a briefing deadline. A court said, says, your opposition to summary judgment is due 14 days later and someone files it 15 days later. And they forgot to do a motion for a one-day extension beforehand. So they file a motion late and my opposition is late. Could you treat it now is then? And so depending on how much you want to scour district court dockets, you're going to see a lot of nunk-pro-tunk motions, because sometimes people, just the reality of timing, and we live with this illusion, that courts can make something now is then. And so why can't we nunk-pro-tunk consent? For any number of other deadlines and any other number of things that are read to have actually more exacting time components than just the word upon. Your Honor, because the issue here is jurisdictional and it concerns whether the magistrate judge exceeded his authority to enter the judgments in the first place. And here, for post-judgment consent, it clearly contradicts the plain meaning of the statute. Just in other parts of the statute, upon is used the same way. In section 636H, it says that upon consent of the chief judge, a retired magistrate judge may be recalled and serve as magistrate judge. And there, it's undisputed, a magistrate judge may not return to serve as a magistrate judge, because the consent requirement is the only procedural safeguard. Let me just fill in there. Let me just jump in. Let's just say a retired magistrate judge started hearing cases without the formal consent of the chief judge. Are you saying that the chief judge couldn't say, oh, you started too soon, I forgot your formal consent was on my desk, I knew it was coming, I actually forgot to sign it, and you got busy hearing cases, done some good work on these cases, I'd now like to sign it? Your Honor— And the chief judge couldn't non-protunct that? Your Honor, in the hypo that you provided, it must have been that the chief judge had orally consented to the magistrate judge to return to serve. It was just that they have not reduced that in writing. And the Section 636C— Let's say there wasn't—let's just push it even more, though. Let's make my hypo a little harder. Let's say there wasn't oral consent, but there was some notion of maybe, I'd love it if you could maybe get started on this, we'll see if it works. And then the magistrate judge, the retired magistrate judge, through just a fit of zeal and enthusiasm, got started. And then the chief judge says, well, look, the last thing I want to do is deter a diligent, capable worker, so I'm going to non-protunct the actions that they've done. Are you saying that that would be absolutely unconstitutional or beyond the statute? Your Honor, that would exceed the statutory requirement in 636H, and in this instance, and it would also exceed the constitutional protection, because the consent is really the only procedural protection that the Congress filled in to avoid the problem of conferring Article III power into Article I judges. And if we were to allow post-judgment consent, it would basically disincentivize parties to consent at the start of the litigation. They could just wait until they see the outcome. If they win, they consent. If they don't, they don't consent, or they bring the lack of consent to the court's attention. And so that's a very practical concern. It's a very functional concern. And if we look at the functionality of these cases, consent makes no difference, probably. As in post-judgment consent would not make any difference to... Yeah, because the defendants don't have any, none of their rights, the party who didn't consent would have none of their rights changed. They would just have their rights kind of really legitimized. Your Honor, maybe from a practical standpoint for this instant case, the parties would not now litigate for their lack of consent, because in this case, they receive a favorable ruling. But again, because they never consented at the beginning of the litigation, it's unclear whether they would have voluntarily consented to proceed before the magistrate judge. And the magistrate judge would not have the jurisdiction to decide the claim without the consent at the beginning of the litigation. So this begins to blur into the implied consent issue. Why don't you tell us your thoughts or your client's thoughts on implied consent? Sure, Your Honor. For implied consent, a binding Supreme Court precedent, Rule v. Withdrawal, actually does not permit a finding of implied consent in this case. The Supreme Court explicitly stated that notification of the right to refuse consent is a prerequisite to any inference of consent. And in the rule, the clerk had provided explicit instructions to defendants to include in their answer whether or not they consent to the magistrate judge's jurisdiction. Upon that instruction, defendants did not provide any consent but proceeded the case before the magistrate judge all the way through trial. But here, no such jurisdiction were provided. The Supreme Court also noted in rule that on at least three occasions, counsel stood silent when the magistrate judge stated that she believed all parties had consented to her jurisdiction. And here, not once did the magistrate judge make clear to all parties that he believed that all of them had consented to his jurisdiction. Therefore, that very important notification requirement was not met here. And that notification requirement was also mandated by Congress in Statute 636. Well, I mean, look, you know, I mean, notice these days comes in a lot of different ways. Like if you get on an ECF docket or virtually any case that I know of in the federal system, one of the first things that you can find out about, one of the first things that oftentimes parties who are suing or sued want to know is who the judge is. And almost any ECF docket of a district court in this nation will tell you after the judge is assigned, some districts take a few days, they'll tell you exactly who that is. And so the notion that people didn't know that there was a magistrate judge on this or that there was anything else like that, they had noticed it was a magistrate judge. They knew exactly who the judge was. Everyone knew. Your Honor, they may know who the judge is, but that's not equivalent. And then they stood silent. And then they stood silent. And so at one level, that's not entirely different than standing silent after a judge says, I think everyone's consented. It might be a little more direct, but they knew that I believe they could have known that this case was assigned to a magistrate judge. And then they stood silent. Your Honor- Didn't ECF provide kind of that missing link notice or I'm postulating that ECF did. I didn't use the way back machine on ECF. I don't think that's possible, but- Yes. Your Honor, that would not be sufficient notice under Section 636C2 and also not the notification requirement as intended by the Supreme Court when it decided we'll be withdrawal. The notification requirement in the statute requires the clerk to clearly communicate the party's right to refuse consent to the parties. And just being on the docket, knowing who the judge is, that is not that type of requirement. And the Supreme Court was very careful when it decided that there could be implied consent as not to disturb the statutory requirement of notice. Because again, consent is the only procedural safeguard to avoid this constitutional problem. So courts were very careful not to make the implied consent overly expansive as to then court to construe any type of silence as implied consent. Sorry, Your Honor. I noticed that my time is up. May I just finish answering the question? Yeah, sure. Thank you. So the Supreme Court was careful not to make the implied consent notion overly expansive as to swallow the consent requirement in the first place. Therefore, because no parties had implicitly or explicitly consented to the magistrate judge's jurisdiction, we ask this court to vacate the orders entered by the magistrate judge and remand the case back to the district court. All right. Thank you very much. Are there any questions from my colleagues? If not, we'll hear from you on rebuttal. I have no question. I have no question. Yeah. All right. As far as Mr. Dorian, are you speaking first for 15 minutes? Yes, Your Honor. All right. The virtual floor is yours. My name is Raymond Dorian with the Governor's Office of General Counsel. I represent the prison officials in this field. I also happen to be the attorney that filed the late consent in the court below. I will argue to the court that this court has jurisdiction based on implied consent under the Roll v. Withrow case. Alternatively, that the post-judgment express consent filed four and a half months after the judgment was entered of summary judgment also alternately gives this court jurisdictional authority. I will also argue that Rule 56d does not apply because the defendant did answer discovery in the court below and supplied Mr. Williams with relevant documents, including his medical records. In addition, because there was no need to delay ruling on the summary judgment based on 56d, the court properly found there's no deliberate difference on the part of health care administrator Pearson because a number of reasons. Firstly, that she was not personally involved in the final decision to terminate Mr. Williams' special diet. She relied upon the judgment of medical professionals at the prison as well as the chief dietician. In addition, we do not believe that the slight allergy to certain foods amounted to a serious medical need under the law. On the issue of implied consent under the U.S. Supreme Court decision of Roll, this case falls within that special exception of implied consent. It is a pragmatic test based on actions versus words. Contrary to what counsel for Mr. Williams stated, on two occasions Magistrate Judge Pesto did express his thoughts that this was a consent case. If you look at documents three in the docket entries as well as document number four in the first sentence of those orders, he specifically says this is a consent case. But at that point, both parties had not consented, right? So constitutionally, how could there have been a court constituted where he, as an article one judge, could make any decision? Well, your honor, that is incorrect. In document number two, Mr. Williams did specifically consent to Magistrate Judge Pesto. Okay, but the other party didn't consent. Your honor, there was no express written consent by the prison officials prior to the entry of summary judgment. Constitutionally, then, how did you have a court that could decide anything? This case was almost identical to the Roll case where they found implied consent. Okay, so what? Where the parties failed to object to the Magistrate Judge Pesto had jurisdiction. The prison officials acted consistently with him being the consented judge and having authority to rule on dispositive matters. They never filed objections to any of his decisions. There was no reports or recommendations issued by Magistrate Judge Pesto, which would indicate that he was not granted the dispositive motion. So I believe that under the ruling in Roll, this definitely was a case where you can imply consent based on... I find that very difficult to do under the facts of this case. Well, your honor, I believe the facts are almost identical to that Roll. The only difference being in Roll, there was apparently a specific notice given to the defendants in that case by the district court about the option. However, I would note that even though there's nothing on the record about a formal notice, as counsel for the prison officials being an attorney for a long period of time and had frequent encounters and experience with the district courts, he was knowledgeable of the fact that that was an option. Was he knowledgeable of the fact that constitutionally he didn't have jurisdiction? No, it was believed that he did have jurisdiction and they act as if... Well, he was, in my opinion, that he mistakenly believed he did under Northern power. How could he have jurisdiction? Well, your honor, no, the Roll case is almost identical. The facts in this case are almost identical to Roll. Let me just pick up on that because you keep saying that the facts of this case are similar to that Supreme Court case, but I want to tease out and I'm going to read for a while. So I don't know if you have 636C1 in front of you, but I want to read you 636C1 because there's a huge difference between the first and the second sentences of C1 that I think dramatically implicate your implied consent argument. The first sentence, and I'm going to read this, it goes, quote, upon the consent of the parties, a full-time United States magistrate judge or a part-time United States magistrate judge who serves as a full-time judicial officer may conduct any or all proceedings in a jury or of that case, end quote. I'll end it there. So what this says is that part-time magistrate judges, not all part-time magistrate judges, and magistrate judge Pesto is a part-time magistrate judge, they have to be the ones who serve as full-time judicial officers. But then if we go to the second sentence, it says, quote, upon consent of the parties pursuant to their specific written request, any other part-time magistrate judge may exercise such jurisdiction, quote. So before we can even get to whether there was implied consent, we need to know what type of magistrate judge, part-time magistrate judge, magistrate judge Pesto is. And there's nothing in the record that indicates that he is, nor is it readily available, at least as I see it, whether he, quote, is a part-time magistrate judge who serves as a full-time officer, maybe then there's an implied consent argument available. There's no implied consent argument available in the second sentence, which says pursuant to their specific written request. And so if magistrate judge Pesto is any other part-time magistrate judge, then you have no shot, as I read this, at implied consent. So in order to make an implied consent argument, you have to make the missing first argument, which is that he's a part-time magistrate judge who serves as a full-time judicial officer. Is there anything in the record that indicates that he's that versus the part-time magistrate judge defined in the second sentence? Your Honor, I don't believe there's anything on the record that indicates that, but I believe that's a fact that would be the court to take judicial notice of. Well, judicial notice of what outcome? Because I don't know the answer. Well, as far as I understand, he had full authority to make dispositive rulings. Well, I mean, but it really, this statute creates a statutory distinction between part-time magistrate judges. And we don't know, and no one's briefed, what part-time magistrate judge is. And until we know that, we can't fairly address an implied consent argument because that first requires a showing that he serves as a full-time judicial officer, whatever is meant by the phrase full-time judicial officer. Well, Your Honor, I believe that could be something easily determined from the court below, and that if the court wishes the parties to be given permission to file supplemental briefs on that issue, that was not an issue addressed in either side's brief. So I think that's something we could easily clarify if need be. But it seems a necessary element in terms of burden of proof. To make an implied consent argument, you have to first prove that this magistrate judge fell into the first sentence of C-1, not the second sentence. And absent that affirmative proof, the argument's waived for forfeiting. Well, Your Honor, that is something that both sides can investigate and bring to the court's attention. Again, I think it's something that this court can take notice of. I'm sure it's of some public record somewhere in the court below. And I believe both sides... I guess my point is the obligation to make that argument would rest with the party who wants to argue in favor of implied consent, and that happens to be your clients. And so the absence of that argument suggests to me that we can't get to the implied consent category because that would first require that this magistrate judge be a first sentence C-1 magistrate judge, not a second sentence magistrate judge. Your Honor, we have been proceeding under the assumption that he was under the first sentence. If that is not the case, then we ask that we be allowed to follow a supplemental brief addressing that issue and inform the court which type of magistrate judge magistrate Judge Pesto actually is. If you wish, I can address the further arguments that I raised in my brief about the retroactive effect of post-judgment consent to a magistrate judge. There's a number of circuits that have held that post-judgment consent can qualify as consent to a magistrate judge. Ninth Circuit ruled in favor of that position as well as the Seventh Circuit. I believe that the value of such a ruling is that it promotes the use of magistrate judges and promotes the Congress's goal of reducing the caseload of the district courts. And that should be considered in addition to whether or not there was implied consent. Furthermore, that the fact that there was implied consent, the fact that there is specific consent filed within four and a half months after judgment is entered, I think that goes to the whole issue of applied consent and confirms the position of the parties with respect to the authority of the magistrate judge prior to the entry of judgment. The issue has come up about whether or not the consent filed was valid enough or not because it was not signed by all the parties and there was not separate consent forms for each defendant. The intention was to file the consent on behalf of all three of the defendants, Wetzel, Smith, and Pearson, and that there's no requirement under the rules, either local rules or the federal procedure, that consent forms be signed by the parties or that be limited to one consent form per defendant. On the issue of whether or not that there should have been a delay in entering summary judgment, I would note that contrary to the position of the appellants, Mr. Williams, he was supplied with discovery. His request for... Let me just ask you a theoretical question. One other area of law that really, really, get to kind of contract their way out of courts and contract their way into arbitrators. Would we ever allow kind of post-arbitration award consent to an arbitrator? Are you talking about in between a private parties and in the private context, the conjectural... Yeah. ...arbitrate? Well, I think the difference between that situation, this situation is that here you were looking at... You also would consider what actions they took, the post-arbitration took. There's a whole history of the litigation between the parties up to the entry of summary judgment in favor of the prison officials. So even if you did not consider the express, the post-judgment express consent to be dispositive, it could be considered in the context of the actions or the inactions of the parties prior to the entry of judgment. I see you're at time. Are there any further questions from the panel? I don't have any further. None. All right. Thank you. Thank you. We now turn it over to Mr. Skarinski. 15 minutes is yours. Thank you again, Your Honor. May it please the court, Michael Skarinski from the Pennsylvania Office of Attorney General, participating as amicus curiae for the Commonwealth of Pennsylvania at the invitation of the court. The more reasonable interpretation of Section 636 is that only the prisoner plaintiff need consent for a magistrate judge to screen the complaint. To reach this interpretation, the court need only use the default statutory construction rule contained in Section 1, Title 1 of the U.S. Code that, whereas importing the plural includes singular. Using this default rule, the court avoids having to rewrite the magistrate fact, as Mr. Burton proposes, avoids having to contradict precedent from both this court and the U.S. Supreme Court. How do you avoid constitutional precedent? Excuse me, Your Honor? How do you avoid constitutional precedent? One judge performing an Article III function. You avoid contradicting U.S. Supreme Court precedent because in a case like Murphy Brothers, an unserved party is no party at all. And that's a principle. But is that Article III judge or Article I judge? That, Murphy, Murphy involves the removal statute. All right. So that difference, but it's a broad principle not limited to just that case, but it's a principle that this court has applied going back to 1975. The principle that an Article I judge cannot exercise Article III powers without the consent of the parties. That's the issue that concerns me, and I don't see how these precedents that you are citing have any relevance on that. Well, Your Honor, we're only talking about this limited situation of a screening. That's the only has not been served with a complaint. A named party to the litigation, and this is creating jurisdiction for the court. So how can you say that you can get consent by one party to jurisdiction without getting consent by the other party, particularly when it's an easy problem to solve? A party, that kind of definition, the name in the complaint, yes, that's one definition, but it's not one that applies here because they haven't been served with the complaint. That's the key difference, I think, here. Let me pick up on that because it strikes me that one of your key argument is that unserved parties, when we read Section 636C, are not parties. I think you want to say that, and that's the angle that you're going. But let me just posit this, and again, I've got the statute in front of me, and I want to switch to Section C-3, and I'll read just the first part of it. Quote, upon entry of judgment in any case referred under Paragraph 1 of this section, which would be C-1, an aggrieved party may appeal directly to the appropriate United States Court of Appeals from the judgment of the magistrate judge in the same matter. Quote, I'm truncating these quotes, but it says an aggrieved party. So let's just say, I'm going to give you a hypothetical. Let's just say that there's a prisoner who files a verified complaint accompanied with a TRO. And let's just say, he's very savvy, maybe with a lot of access to the law library before his filing enabled him to do this, let him or her to do this. He does this, and he succeeds. He or she succeeds and gets a TRO against a prison or a prison official or anyone. And the TRO can be entered before service. It's a very unique creature, but it can be entered before service. What that would mean is that whoever that judgment was entered against would not be a party for purposes of 636C. And because they were not a party, they would not therefore be an aggrieved party, and they would have no ability to appeal that adverse ruling, that adverse entry of a TRO. Now, maybe later after they got served, then, or maybe as long as they, you know, maybe things change, but at least that TRO would put us in a procedural black hole in which a TRO, prisoners don't get too many TROs from what I understand, but a TRO that a prisoner would secure would be unappealable. And I think for your reading, you have to say, yes, we take the good with the bad, and we own that too. We just will take the risk that that's not going to happen to us. What do you say? It's an interesting hypothetical, Your Honor. I mean, once they are served with a TRO, I think, as you mentioned, it would... Maybe, but TROs can be entered without service. I understand that. This is a hard version of the hypo. They aren't served. Therefore, they're an unserved party, which means that they are not a party under your definition. And in order to have appellate rights, you have to be a party. So what happens is, TROs can only last for 14 days upon renewal for another 14 days. But if you, as I understand the rule, but what you have to do is, if you want a reading of a statute, and so if you want us to say that party does not mean unserved parties, that means that in the event that someone wins a TRO against an unserved party entered by a magistrate judge, the loser, as long as they remain unserved, has no appellate rights. That's a pretty, pretty big result. A constitutional dimension, at least for the aggrieved party in that instance, too. Forget, for the moment, the concerns about Article 1 and Article 3. That's a big deal. No appellate rights. I think, Caroline, there are no appellate rights because 636C says you don't have them. Well, I think they could inject themselves into the lawsuit at that point and seek to have it vacated. I think this gets into one of the points I wanted to make. Not until they were served. Not until they were served if party doesn't mean unserved parties. I understand you, and I think this gets into one of the points I wanted to make. I made in my brief is that we have to think, we have to keep in mind that this idea of screening postdates the consent provision by 16 years. So these kind of situations where you have one party wasn't in the mind of Congress when the consent provision was first added, which is why it's so important here to consider congressional intent along with statute, along with the text of my statute. I know my friend on the other side wants to focus just on the text, but from this court and the Supreme Court over and over again, it's been emphasized that we have to consider the text, the structure, the context, history, and purpose, and use our common sense when interpreting statutes. Well, on common sense, I hate to press my hypo again, but your reading really leads us to a strange common sense answer, at least for the TRO context. I understand, Your Honor. And screening, I mean, it's very easy for the magistrate judge to simply send his recommendation to the district judge, which the district judge signs off on, and there you have solved the problem of an Article I judge exercising Article III judicial functions, right? Yes, that's an easy way, but here Mr. Burton decided that he wanted a magistrate to decide the case, to decide, not the case, but the screening, just the limited- Okay, but jurisdictionally, constitutionally, he wants to have the presiding officer exercise Article III powers. He doesn't know how to express that in those words, but he wants to have a decision made by the equivalent of an Article III judge, and until you satisfy the requirements that the parties to the litigation, and the parties in this situation, I think, would be your named parties, you haven't created an Article III functioning court until you have the consent of the named parties. If you want to get a decision prior to that, you simply have the district judge. Again, Your Honor, he specifically decided to forego his right to an Article III judge. That was honored, and that was his prerogative. Well, does he understand what an Article III judge is? No. I don't know if he understands or not. He signed the consent form. He wants to get the case tried. We understand what Article I judges are, we understand what extreme court has said that an Article I judge cannot perform the functions of an Article III judge. Now, Congress passed a statute that has said they can do so with consent, but that is, the statute says the consent of the parties. It doesn't say the consent of the served parties. It doesn't say the consent of the filing party. It says the consent of the parties, and we're constitutional requirements, not with the efficient functioning of the court. And I find it very difficult under the constitutional situation you have here to say that we can ignore the express language of the statute, which is intended to avoid the constitutional problem of Article I judges exercising Article III powers. Again, Your Honor, I think in this situation where it's impossible for the defendants to consent, it would be an absurd interpretation to require them to consent when they don't even know of the lawsuit. The default rule, again, is that the plural includes- Okay, but you want to create a court that has jurisdiction. So if you feel at that point it's necessary to move forward, you simply have the magistrate judge make a recommendation to the district judge who signs an order, and you're all done. Yes, that's another option, Your Honor, but Mr.- I agree, it's easy to, it's just signing a form for either party. But this time, the party, the defendants were not aware of the lawsuit. So there was no way for them- But you have constitutional implications that you don't just simply throw out by saying, well, it's easier this way. Again, he opted to forego an Article III judge. So his constitutional rights were honored. This is one of the problems of this lawsuit, is that he's trying to assert the rights of parties, or non-parties, really, rights to an Article III judge, which I think gets into one of the standing problems we raised, that he hasn't suffered, he hasn't been aggrieved. Well, I mean, at one level, that depends on how you define the injury. I mean, wouldn't you think that a person who has a judgment against them issued by a court lacking jurisdiction has been aggrieved? Frame it that way, he's been aggrieved. I think- If you frame it some other way, and you say, oh, he consented to all this, maybe he hasn't been. But if you say, oh, you know what, just in the abstract, is a person who has a judgment entered against them by a court that didn't have jurisdiction to do that, does that person agree? I think he's aggrieved to raise the issue of the dismissal, but not who the judge consented to. I think that's what my adversary cited to a case called Dewey, where he said it was a non-waivable jurisdictional defect. But there's a big difference in Dewey. Dewey, the non-served party, the unnamed class members who were not served, they did not consent at the district court level, and then they raised it on appeal. So it was a question of preservation in Dewey. Whereas here, you have a big difference, where Mr. Burton consented at the district court level, comes up on appeal, and then complains about consenting himself. Well, I mean, look, I mean, again, this is really a basic principle. But I mean, you can't consent. The parties, one or both of them, usually can't make federal jurisdiction out of whole cloth. You can't just say, we'd really like a federal court. The amount of controversy is only $50,000, but we'd still really like a federal court to hear this. We would say, oh, no, no, no, no, that does not work. And so in this case, it's not a mountain controversy that defines the bounds of federal court jurisdiction. But consent of all parties, consent of one party can't complete that any more than the party's willingness to forego the remaining $25,000 that's in play. I understand what you're saying, Your Honor. But I would also point out that standing is also an issue of subject matter jurisdiction. And I think even if, you know, I understand what you're saying, and let's assume that's correct. I think it's still important that Mr. Burton consented here in terms of congressional intent. Look at Rowell. They talk about how this kind of gamesmanship, this kind of judge shopping is contrary to congressional intent also, which is another reason why it should be disincentivized, as the court said it in Rowell. As I was saying earlier, I know I'm close on my time here, Your Honor. I just want to make one quick point. My adversaries are actually asking, Your Honor, to rewrite the statute because it's any or all proceeding. And that naturally includes screening. But they want you to add an exception into there that says any or all proceeding, but not screening. And again, Congress passed the consent provision 16 years before the screening. It's a case where I think it's at least ambiguous as to what parties means in this context. And when it's ambiguous, you have to consider the congressional intent. The intent here was to make the federal judiciary more efficient, not less efficient by adding an extra layer of review. So I know I'm over my time, Your Honor. So for all these reasons, I haven't addressed the merits, but thank you for your time. Thank you very much, counsel. Ms. Beth, you reserve, I believe, three minutes for rebuttal. Thank you, Your Honor. I just want to make three points and respond to the commonwealth's arguments. First, Mr. Burton was not the one to raise this question of jurisdiction. This court is the one that raised this question that is on appeal right now. So these concerns of gamesmanship are curious and inapplicable in this context. And of course, this court raised this question, not as whether or not Mr. Burton consented to have his right foregone, but whether or not the magistrate judge had the authority. So we need to shift the focus to the question that this court actually certified, that this court raised to LaFontaine, and that this court has the independent authority and obligation to address. This is a separate question from a standing inquiry. Second, I want to address the Dictionary Act point. The default rule being that the is certainly true that that rule exists. However, the Dictionary Act is qualified by looking at the context. Here, the context, as I already mentioned, the structure of the statute shows intentionality between the use of the plural and the singular. And that analysis has also been applied at the Supreme Court. In 2017, we saw the Supreme Court using this exact argument, looking to see where the plural was used there. It was the patent act. It was for word component, looking to see where the plural was used, looking to see where the singular was. So you're right. Context matters, right? Context matters. Let's just spin out a little more broadly in the rules of civil procedure, because we didn't really talk about this. And I don't know what your memorization is, the rules of civil procedure. But Rule 20, as I understand it, allows for joined parties, a person who's necessary, but really, the court's going to have to do a little more joining. And so let's just say that there's a case that's going on, plaintiff consents, defendant consents to a magistrate judge. It's going on, it walks its way through discovery. And the magistrate judge says, oh yeah, the last day to join parties is two weeks after discovery. And so then the plaintiff or the defendant wants to add new parties, a third party defendant, a co-defendant, anything like this. We have a new party after the case is pretty much buttoned up and ready either for summary judgment or trial. And that new party says, so sorry, I don't want to be in front of a magistrate judge. Does that mean, or we involuntarily join another party that's necessary? Does that mean that when we read this act, and in your opening, you talked about how important the word upon was, and that it had to mean kind of early on in time. But the case is perfectly fine for six months, eight months, however long discovery takes, in front of an Article I judge, perfectly fine. And now a new part, as according to you, is that the magistrate judge's authority has now absolutely, statutorily, constitutionally disappeared because that newly joined party doesn't want it. That kind of feels like a very strange notion of jurisdiction, instant evaporation, spontaneous and instant evaporation. What do you say to that newly joined party concern? Well, I see whether or not the magistrate judge has jurisdiction over that newly joined party who has not consented to the magistrate judge's jurisdiction, then very clearly under our reading, the magistrate judge would not have authority over that party. But if that party's properly joined, right, then the magistrate judge doesn't have jurisdiction at all. What about, though, can the magistrate judge even adjudicate the joinder motion? So let's just say the defendant says, I want to name a third party defendant, or I want to name a, you know, a claim against somebody else. When that, when the defendant starts to get active and try to bring in a new party through joinder or otherwise, does the magistrate judge have to say, well, can't even decide that motion until that new unserved, unjoined party consents to me deciding that. And so if that party doesn't consent, then that motion goes to district court, maybe. And if the district court says, yeah, let that party in, then the entire case goes to district court. And that feels like quite a twist, at least if upon means early on in a case. Yeah, I don't want to speak for my co-counsel, or rather my colleague, Ms. Hwang, but in terms of whether upon means early on or simply before the adjudication of the final decision, that would be just my own take on this in terms of whether or not, you know, this is a twist, perhaps, yes, Your Honor. But of course, as I'm going to borrow from Judge Ross' language, you know, the issue here is whether or not there's a properly constituted court to make this final decision in the first place. And despite whatever practical inconveniences and whether, you know, despite the realistic implications narrowly involved in this case, we do have to honor- But the problem with this hypo is that the court was properly constituted for a long time. And then somehow through motion of a party, it becomes improperly constituted. And so it allows a certain amount of gamesmanship. Because if a party doesn't like how things are consented to, they can drum up a reason to bring in another party, rightly or wrongly, right? But there's usually someone else you can sue. Oftentimes, a plaintiff will not sue the individual wrongdoer, but the employer because on a respondeat superior claim, because suing that individual wrongdoer, they might not have so-called deep pockets. And so that plaintiff could do that, leave the individual wrongdoer out, see how things go, take a flyer on it with the matric judge, and then say, oh, I don't like how this is going. I want to sue someone else. Or the employer could bring in the wrongdoer, its employee and say, oh, they're on the hook too, because we don't like how things are going. That employee would be pretty savvy to realize, well, if it's not going good for my employer, it's probably not going good for me either. I want out of this judge. So there are gamesmanship concerns, at least with joinder and adding of parties, especially defendant's ability to do that. And it feels like once you get a properly constituted court, one time, we shouldn't just let that spontaneously disappear. Certainly those gamesmanship concerns sound valid, Your Honor. Hopefully they're not too realistic, but as I understand, the court has other mechanisms to dealing with bad faith actions of the parties. But it may not be bad faith because you could join the employee. As a we get a new judge. Absolutely. Win-win. That sounds hard, Your Honor. Fortunately here, we don't have that situation. Fortunately here, the question that's before this court is whether unilateral consent can ever suffice for magistrate judge jurisdiction. So if we look at that question narrowly, can unilateral consent be enough to properly constitute a court at all? We know that the answer is no, looking at the text. And of course, the common law says that we focus a bit on the text because that is what is required of statutory interpretation when it's unambiguous. You stop there. We also have the structure of the legislative history, the canon of constitutional avoidance that all argue for the same position for common sense interpretation that we're taking. If I could just make one last point, Your Honor, about this screening requirement, about this argument that we're rewriting the statute because the magistrate judge can no longer conduct the screening. That's a curious argument, Your Honor, because that suggests that screening can only ever happen, that screening is mandated prior to service. Nothing in 1915a says that it's required to do that prior service. It only uses the language as early as practicable. Nothing in 1915e2, which governs ISP motion, says that it is required to happen before service. It certainly says that any time. For those situations when a magistrate judge is the one who wishes to that can happen after service. There's no rewriting of the statute here. There's only actually giving effect to the plain meaning of the language as Congress intended. All right. You've been generous with your three minutes of rebuttal time. I might have taken a little bit of your three minutes. We turn it over to your colleague, Ms. Wong, for three minutes of her own time. Thank you, Your Honors. On rebuttal, I would to also address three points. First, as Judge Phipps has pointed out, the opposing counsel cannot even bring the implied consent argument in the first place because they have not briefed whether Judge Pesto is a magistrate judge covered by the first sentence of 636c or second sentence of the 636c1. As far as we know, Judge Pesto is a part-time magistrate judge. It's really incumbent on the opposing counsel to file whether they are a part-time magistrate judge serving as a full-time judicial officer. Even if Judge Pesto is a magistrate judge serving as a full-time judicial officer, there's still no implied consent because the notification requirement is not met. The opposing counsel talked about the December 1, 2017 order in which Judge Pesto granted, dismissed the case as to defendants Hueso and Smith and ordered service on defendant Pearson. As Judge Roth pointed out, that decision was made only with consent with Mr. Williams. That cannot serve as proper notice to the defendants because defendants at that point have not even been served and brought into the case. That is not proper notification as decided by the Supreme Court in Rule v. Withdrawal or mandated by Congress in Section 636c2. And lastly, that leaves the defendants with the only argument on post-judgment consent. And on that, we urge the court to give effect to the plain meaning of the statutes and find that parties to plain games by consent after they receive a favorable ruling. And on the Maris-Aldrich split to quickly address the fact that the defendant has keep referencing this allergy report as showing a slight allergy. But here, even with defendant's own expert dietician, Margaret Gordon, has said even with the slight allergy, she would still advise defendant Mr. Williams to avoid those food if he has suffered an adverse allergic reaction to the food. And in fact, the prison had used the allergy report to grant Mr. Williams medical diet in the first place. But unfortunately for Mr. Williams, defendant had not provided him with any medical records in the file showing his allergic reaction. And because he had outstanding discovery requests that were not answered by defendants, we ask this court, even assuming that the magistrate judge did have jurisdiction here, which he did not, to vacate the summary judgment order entered by the magistrate judge and remand the case. And thank you. Thank you very much. We'll take this matter under advisement. We especially appreciate, we appreciate all counsel. We especially appreciate law students who are willing to subject themselves to the questions of the panel. Thank you for doing so. We wish you well in the remainder of your schooling. And next time. Can I add too that it warms my heart to see two young women so able in the law who will follow in the footsteps of some of us old timers who started out many years ago with promoting women in the law. And it warms my heart to see so many able young women following in my footsteps. Thank you to the entire panel for giving us also the time. Well, with that, we will take this matter under advisement. Thank you all counsel. Thank